ROBERT PULLIAM *v.* COMMONWEALTH.

[Abstract Kentucky Law Reporter, Vol. 6—305.]

**Qualification of Juror in Criminal Case.**

Where after a conviction in a criminal case affidavits are filed showing that a juror, who stated upon being put in the jury box that he had neither formed nor expressed any opinion as to the merits of the cause, had in fact expressed an opinion that the accused was guilty raises an issue for the decision of the trial court and his decision is final thereon.

**No Reversal on Weight of Evidence.**

In. a criminal case the jury and the trial judge determine the facts from the evidence and this court can not reverse because it may think the evidence fails to establish guilt beyond a reasonable doubt.

**Exceptions and Bill of Exceptions.**

Exceptions must be taken upon the ruling of the trial court where a party complaining wants a reversal and the exceptions must be shown by a bill of exceptions.

APPEAL FROM MERCER CIRCUIT COURT.

October 14, 1884.

OPINION BY JUDGE PRYOR:

In the consideration of the questions involved in this case we deem it unnecessary to follow counsel as to the constitutional rights of the accused in this court as it must be conceded that the right of appeal when allowed has never been without some restriction both in civil and criminal cases.

Appeals may be allowed for certain specified errors and as far back as *Cornelison v. Commonwealth,* 15 B. Monroe, 539, it was held by reason of the law then in existence that this court had no revisory power over the action of the circuit court as to the alleged disqualification of a juror.

The only question really presented in this case is as to. the extent of this supervisory power under the present system regulating appeals to this court in criminal cases. It is attempted to be shown that a juror who had made oath that he had neither formed nor expressed an opinion when taking his seat in the jury box had perjured himself, affidavits having been presented that this juror had

before the trial expressed an opinion to the effect that the accused was guilty and should be punished. The accused after conviction is searching for some reason why a new trial should be awarded him and the judge who conducts the trial and is acquainted with the juror and the circumstances under which he was accepted, as well as the manner in which his integrity as a man and juror has been assailed overrules the motion for a new trial and by the express provision of the Code he is made a final arbiter of that question. He is better qualified to judge of such questions than this court because he is not only an eye witness to what transpires, but is himself supervising the conduct of the trial with a view of giving to the accused as well as the Commonwealth a fair and impartial trial. Such matters should be left to the discretion of the trial court else it should be almost an impossibility to sustain a verdict and judgment of conviction in a criminal case. For the same reason it is provided that the question of fact involved in the case is alone with the jury and the trial court, and this court where there is any evidence upon which the conviction is based is not allowed to say that there is a reasonable doubt as to the guilt of the accused and for that reason the judgment must be reversed. No such power belongs to the Appellate Court and the trial court must alone be looked to for relief where the facts render it doubtful as to the guilt of the accused.

This court has recently determined a kindred question and overruled an opinion in a case for a misdemeanor which was regarded as a departure from the well recognized rule of practice under the present Code. The recent case is that of *Redmon v. Commonwealth*, 82 Ky. 333, followed by the case of *Letcher v. Commonwealth* (6 Kentucky Law Reporter, 305), and which precedents may and do exist, under the former Code sustaining the views of counsel a different rule prevails under the New Code. When the Code provides that "the decrees of the court upon challenges to the panel and for causes, upon motion to set aside an indictment, and upon motions for a new trial shall not be subject to exception" it means something.

Exceptions are necessary to be made upon any motion where the party complaining wants a reversal in this court by reason of the action of the court below in regard to it. The exception must be shown by a bill of exceptions or upon the record else this court

will not consider it, and although this court is required to reverse
for an error in the record affecting the substantial rights of the
party when an examination of the entire record shows that the ac-
cused has been prejudiced, it does not dispense with the necessity of
preparing a bill of exceptions in the same manner that would have
been required if that provision of the Code had been omitted.   The
manifest object of that provision was, that although the court below
may have erred in the particular instance complained of, this court
shall not reverse unless after considering the entire record it is
of, the opinion the substantial rights of the accused have been pre-
judiced by reason of the errors.

So in this case it is manifest that the court below did not err in
failing to give an instruction based upon the idea that the shooting
of Hawkins was accidental.   There might be a possibility that the
pistol went off accidentally and without an intention on the part of
the accused to shoot either Moffet or Hawkins,. but when examin-
ing the testimony no such conclusion can be reached.   The defense
in the first place is based on the fact established by two witnesses
that Hawkins knocked the accused down and was assaulting him
when accused shot him.   Evidence for the accused conduces to make
but a case of self defense if his witnesses are to be believed and after
conviction it is claimed that these witnesses were mistaken as appel-
lant might have been shooting at Moffet and shot Hawkins acci-
dentally.   Moffet swears or rather stated that he was shot at un-
intentionally but the jury from the proof or the circumstances at-
tending the killing could not as rational men have said that Haw-
kins was shot accidentally.   The Commonwealth's witnesses make
out a clear case against accused and his witnesses swear that Haw-
kins knocked him down twice before he shot him.

The instructions given presented the entire law of the case.

The court told the jury that if the accused had reasonable grounds
to apprehend and did apprehend danger of loss of life or great
bodily harm from either Moffet or Hawkins he then had the right
to use such means as were necessary or appeared to him to be neces-
sary to defend himself even to the taking of the life of Hawkins
and furthermore that it was not necessary that the danger to the
defendant should have really existed but it was sufficient if it rea-
sonably appeared to defendant to exist.   The appellant can not com-

plain of the instructions as when taken as a whole they were really more favorable to him than the law authorizes.

Nor do we perceive any error in rejecting the testimony complained of, or in the admission of incompetent testimony. If Mixberry was a man of bad character the defense had the right to prove it, and to have allowed the defense to have proven that the witness was charged with a particular crime, would have necessitated an investigation as to the truth of the charge, in order that the jury might determine the importance to be attached to his testimony. His credibility should have been assailed by proving, if it could have been done, his general bad character. James Moffet was a competent witness and his statements made after the difficulty that he could have saved Hawkins if he could have reached his gun could have been made by him and if competent it did not prejudice the accused as it is proven that Moffet was in the difficulty and from defendant's proof Hawkins was aiding him. Nor was the refusal of the court to permit the statement of Littlehall that Moffet and Hawkins told Dr. Hawkins when asked if they were going home that "they were going to stay and have a little fun and wake up Harrodsburg" the statement was immaterial and only proved when admitted that they were under the influence of liquor or proposed to enjoy a spree that night.

Nor was the testimony of Smith prejudicial. It was competent to show that the bruise or bump was on the head or over the eye of the accused prior to the difficulty with Hawkins. That he was under arrest and drunk, when knocked down by the policeman might have been omitted, but that he was knocked down by the policeman was competent with a view of showing the cause of the bruise above the eye.

It seems to us however that all these errors if they can be so considered amount to but little, after the main facts have been detailed to an intelligent jury by witnesses for and against the accused, who were present and saw the beginning and ending of the difficulty. That accused shot both Hawkins and Moffet is conceded and the jury after hearing the case as to the killing of Hawkins has said that he was not acting in self defense and this was really the issue. That he shot Hawkins purposely is evident and whether or not he was acting in self defense at the time the jury must decide.

Their verdict is against the accused and their judgment of conviction must be *affirmed.* (See next case for petition for rehearing.)

*Thompson & Bush, Bell & Willson, E. H. Gaither, John C. Thompson, for appellant.*

*P. W. Hardin, for appellee.*

---

PETITION FOR REHEARING.

ROBERT PULLIAM *v.* COMMONWEALTH.

[Abstract Kentucky Law Reporter, Vol. 6—305.]

**Court Not to Weigh Testimony.**

It is not the province of the court to weigh the testimony in a criminal case or to take from the jury the consideration of any fact proven in the case essential to the defense.

APPEAL FROM MERCER CIRCUIT COURT.

November 1, 1884.

OPINION BY JUDGE PRYOR:

We do not question the rule "that every deduction which the jury might have been authorized to make from the testimony must be assumed as a fact proven."

From the beginning of the trial, the defense was based on the idea, that the shooting of Hawkins was in self defense, to preserve the life of Pulliam from the assault of Hawkins. This fact, when looking to the testimony for the defense alone, is clearly established by the testimony of more than one witness. The testimony for the Commonwealth conduces to establish, that Hawkins made no assault on Pulliam, and therefore the defense says, that Pulliam in defending himself from the attack of Moffet, accidentally shot Hawkins.

A witness for the Commonwealth says, that at the time of the first shot some one ran from where Hawkins was, across the pavement to the buggy where Moffet was found.

The jury is asked to say, from this fact, that Moffet was the man who ran to the buggy, and in the next place that Moffet was the man that knocked Hawkins down; and in the third place that

Pulliam shot Hawkins by mistake. Laws says that Moffet would have had time, after he dashed at Pulliam to go to his buggy and get a shot gun before Pulliam fired.

This witness was between Hawkins and Pulliam. Pulliam fired first, to the right of the witness, and then to the left.

Defendant's own witness says that Moffet turned, and as he got to the buggy Pulliam fired first shot, and made second shot two or three seconds after, and also, that when the second shot was made, Hawkins was advancing.

It is not the province of the court to weigh the testimony, or take from the jury the consideration of any fact proven in the case, essential to the defense. Here the defense says "that I shot Hawkins but did it to save my own life; he had twice knocked me down." Secondly, "I shot at Moffet, and by mistake shot Hawkins," and to establish this, one witness says that about the time of the firing, some one was seen to run from where Hawkins was, to the buggy; and therefore the conclusion is, that I shot at Moffet and not at Hawkins."

There is nothing in this case upon which to rest such a theory. It is inconsistent with the defense, and in no manner established by the prosecution. A much stronger case could be made out of shooting Moffet by mistake than Hawkins, in fact Moffet stated that in his opinion the accused did not intend to shoot him. We have again read the testimony and see nothing to authorize us to change the conclusion reached.

Petition *overruled.*

*Thompson & Bush, Bell & Willson, E. H. Gaithen, John C. Thompson, for appellant.*

*P. W. Hardin, for appellee.*